UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
S.W.B. NEW ENGLAND, INC.,                                   :
                                                            :
                       Plaintiff,                           :
                                                            :    06 Civ. 15357 (GEL)
                      -v-                                 :
                                                            :    **OPINION AND ORDER**
                                                            :
R.A.B. FOOD GROUP, LLC, MILLBROOK                           :
DISTRIBUTION SERVICES, INC., and                            :
BRUCE LEEDS,                                                :
                                                            :
                       Defendants.                          :
                                                            :
------------------------------------------------------------x

Stephen Wagner, Cohen Tauber Spievack & Wagner LLP (Andrea J. Lawrence, Yamuna Bhaskaran, on the brief), for Plaintiff.

Kathryn M. Ryan, Baker & McKenzie LLP (Richard A. De Palma, on the brief), for Defendants.

GERARD E. LYNCH, District Judge:

      Plaintiff S.W.B. New England, Inc. ("SWB") originally brought this action against defendants R.A.B. Food Group, LLC ("RAB") and Millbrook Distribution Services, Inc. ("Millbrook"), alleging, inter alia, that RAB and Millbrook breached an exclusive distributorship agreement with SWB. An amended complaint subsequently added an antitrust claim against RAB and Millbrook, charging that these defendants attempted to monopolize the kosher food market in New England, and a claim that defendant Bruce Leeds, a former employee of SWB subsequently hired by RAB, breached fiduciary duties owed to SWB. Leeds filed a motion for summary judgment on plaintiff's claim for breach of fiduciary duty, which was denied by this Court. S.W.B. New England, Inc. v. R.A.B. Food Group, LLC, No. 06 CV 15357, 2007 WL

1753067 (S.D.N.Y. June 13, 2007). RAB and Millbrook filed the instant motion to dismiss plaintiff's claims for attempted monopolization and specific performance pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, defendants' motion will be granted with respect to plaintiff's antitrust claim, but denied as to its claim for specific performance.

## BACKGROUND

Plaintiff SWB is a distributor of kosher, ethnic and specialty food products and related items to retail and wholesale outlets in New England. (Am. Compl. ¶ 5.) Defendant RAB is a manufacturer and distributor of kosher food products. (Id. ¶ 6.) Defendant Millbrook is a distributor affiliated with RAB and under common ownership and control. (Id. ¶ 7.) Millbrook is SWB's only major competitor in the distribution of kosher products in New England. (Id. ¶ 59).

Beginning in 1970, SWB served as the exclusive distributor in New England of kosher food products manufactured by Rokeach Acquisition LLC, its predecessors, affiliates and subsidiaries (collectively, "Rokeach"). (Id. ¶ 11.) During this time, Rokeach kosher products competed with the Manischewitz line of kosher products (Id. ¶ 16), which from 2000 onward was owned and controlled by defendant RAB (Id. ¶ 17).

On or about November 3, 2000, SWB and Rokeach entered into an exclusive distributorship agreement (the "Distributorship Agreement" or the "Agreement"), pursuant to which Rokeach designated SWB as its exclusive distributor in the Exclusive Territory (defined in the Agreement as Massachusetts, New Hampshire, Rhode Island, Maine, Vermont, and Connecticut). (Id. ¶ 19.) The term of the Distributorship Agreement was for ten years,

2

commencing on November 3, 2000, and expiring on November 3, 2010. (Id. ¶ 20.)

On or about May 22, 2006, RAB purchased substantially all of Rokeach's assets and assumed certain of its obligations, including Rokeach's obligations to SWB under the Distributorship Agreement. (Id. ¶ 34.) On or about July 17, 2006, RAB informed SWB that, based upon its review of Rokeach's accounts receivables, SWB had breached the Distributorship Agreement by failing to tender payment to RAB in accordance with the provisions of the Agreement, and taking unauthorized deductions and/or discounts from its payments to RAB. (Id. ¶ 36.)

By letter dated November 28, 2006, RAB purported to terminate the Distributorship Agreement (the "Termination Letter"). (Id. ¶ 43.) By letter dated November 30, 2006, SWB rejected RAB's purported Termination Letter, advising RAB that it had no right to terminate the Distributorship Agreement. (Id. ¶ 45.) On December 15, 2006, RAB advised SWB, by letter, that it would no longer sell products to SWB. (Id. ¶ 47.)

On December 21, 2006, plaintiff brought this action against defendant RAB, in connection with RAB's termination of the Distributorship Agreement. SWB's original complaint (the "Complaint") asserted claims for breach of contract, tortious interference with business relations, and unfair competition. (Compl. ¶¶ 74-88.) RAB was the only named defendant in the original complaint.

On the same day the Complaint was filed, SWB applied to the Court for a temporary restraining order and preliminary injunction to prevent RAB from terminating the Distributorship Agreement. (See Lawrence Decl. Ex. 1 at 1.) The Court denied SWB's request for a temporary restraining order, but held a hearing on plaintiff's request for a preliminary

injunction. (Id.) After a two-day hearing held on January 4-5, 2007, the Court granted in part SWB's application for a preliminary injunction. (Id. at 2.) Specifically, the Court enjoined RAB from terminating SWB as a distributor of "Products" (as defined in the Distributorship Agreement) until after April 10, 2007. (Id.)

On February 16, 2007, shortly after the preliminary injunction hearing, plaintiff filed the Amended Complaint, adding Millbrook as a defendant. The Amended Complaint alleges, inter alia, that RAB and Millbrook are "attempting to monopolize part or all of the kosher food market in New England in order to set prices and exclude competition" (Am. Compl. ¶ 102), and that "[i]f RAB's and Millbrook's conduct is not restrained, there is a dangerous probability that they will succeed in achieving monopoly power in the kosher food industry in the Market" (id. ¶ 107). It further alleges that RAB "wrongfully terminated the Distributorship Agreement and has refused to sell Product to SWB . . . in order to enable Millbrook to exist as the dominant kosher distributor in New England." (Id. ¶ 103.) Finally, the Amended Complaint alleges that RAB and Millbrook intend to undercut SWB's pricing on both kosher and ethnic products in order to take over SWB's clients for the purpose of putting SWB out of business. (Id. ¶ 60.)

On March 19, 2007, RAB and Millbrook moved to dismiss SWB's claim of attempted monopolization, as well as its claim for specific performance as a remedy for breach of contract, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## DISCUSSION

**I. Motion to Dismiss Standard**

Defendants must meet a stringent standard in order to obtain dismissal for failure to state a claim. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is

4

entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds, Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982); accord, e.g., Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 476 (2d Cir. 2006).

However, a complaint may be dismissed pursuant to Rule 12(b)(6) where the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1974 (2007). As the Second Circuit has recently stated, Twombly requires that a plaintiff satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65 (internal quotation marks omitted). In order to state a claim, the factual allegations contained in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965.

When deciding a 12(b)(6) motion, the Court must take as true the facts as alleged in plaintiff's complaint. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006); Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995). All reasonable inferences must be drawn in the plaintiff's favor. Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir. 2004). However, "[g]eneral, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint." Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1092 (2d Cir. 1995).

## II. Section Two of the Sherman Antitrust Act

Defendants move to dismiss plaintiff's claims pursuant to Section 2 of the Sherman Act, 15 U.S.C. § 2. Section 2 prohibits efforts to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." Id.

Defendants argue that plaintiff lacks standing to pursue this claim. (D. Memo. 16-20.) Section 4 of the Clayton Act dictates who has standing to sue under the antitrust laws: "[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent." 15 U.S.C. § 15.

In the context of antitrust cases, however, standing involves more than satisfying the usual "case or controversy" requirement. The doctrine of antitrust standing is "different from that of standing as a constitutional doctrine," where "[h]arm to the antitrust plaintiff is sufficient to satisfy the . . . requirement of injury in fact." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 535 n.31 (1983). In order to have antitrust standing, a private plaintiff must show, in addition to injury in fact to its business or property, "a special kind of 'antitrust injury,' as well as . . . that the plaintiff is an 'efficient enforcer' to assert a private antitrust claim." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007). See also Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc., 467 F.3d 283, 290-91 (2d Cir. 2006). The purpose of antitrust standing is to distinguish between injuries competitors suffer from competition itself and injuries from anticompetitive activity. See Balaklaw v. Lovell, 14 F.3d 793, 797 (2d Cir. 1994). An antitrust injury is an "injury of the type

the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977). Accordingly, an antitrust injury must "reflect the anticompetitive effect either of the violation" of the antitrust laws, "or of anticompetitive acts made possible by the violation." Id.

Plaintiff points to three injuries that it says give it standing to sue under the Sherman Act. First, plaintiff argues that it is injured "because of the adverse effect the Defendants' actions ultimately will have on the price of the products in the Market." (P. Opp. 13). Second, plaintiff claims that it is injured by RAB's "refusal to deal" with it through its termination of the Distributorship Agreement following its acquisition of Rokeach. (P. Opp. 15.) Finally, plaintiff contends that it was injured by defendants' "predatory pricing" of kosher food products. (Id.) For the following reasons, none of these provide plaintiff with standing to pursue its antitrust claim.

### A. Monopoly Pricing

Plaintiff's first basis for standing is that defendants may have the ability, at some point in the future, to charge monopoly prices for kosher foods. This is not an adequate basis for standing, because SWB does not allege that it would be harmed by such monopoly prices. Indeed, plaintiff makes clear that RAB is refusing to sell kosher foods to it at all, at any price. (Am. Compl. ¶ 103.) Thus, while consumers may suffer as a result of any monopolization of kosher food distribution that may be accomplished by RAB and Millbrook, *SWB* does not stand to lose anything as a result of any higher prices that RAB and Millbrook may be able to charge. In Port Dock, the Second Circuit considered a similar situation in which a distributor sued its erstwhile supplier following the supplier's termination of its distribution agreement. 507 F.3d at

119-20.  The Court held that the distributor did not have antitrust standing because it "did not suffer an injury from increased prices" where its grievance was that the supplier "refused to sell to it at all."  Id. at 123.  A distributor no longer in the business of distributing goods is not injured by monopoly prices charged for those goods.

      B.      <u>Refusal to Sell</u>

Plaintiff does allege an actual injury flowing from the termination of the Distributorship Agreement, in terms of revenue lost from not being able to distribute Rokeach products.  But a decision to change distributors is not, without more, an antitrust injury. "Manufacturers must enjoy some freedom to determine how to distribute their products without subjecting themselves to attack under the antitrust laws by disappointed distributors, absent activity that is manifestly anticompetitive."  <u>Electronics Communs. Corp. v. Toshiba Am. Consumer Prods., Inc.</u>, 129 F.3d 240, 245-46 (2d Cir. 1997).  Plaintiffs have alleged nothing more than a manufacturer's decision to substitute one exclusive distribution arrangement for another.  Such changes in distribution strategy are not anticompetitive.  "[T]he termination of one distributor of a product for another in a given market is not, standing alone, a violation of antitrust laws." <u>Agency Dev., Inc. v. Med Am. Ins. Co. of New York</u>, 310 F. Supp. 2d 538, 544 (W.D.N.Y. 2004), <u>aff'd</u> 142 Fed. Appx. 545 (2d Cir. 2005).

It is not important to this analysis that RAB may be creating a monopoly in the distribution of its own product, by choosing to replace SWB with its own subsidiary Millbrook. "It is well settled that a manufacturer's monopoly over the distribution of its own product cannot form the basis of a valid monopolization claim." <u>Theatre Party Assocs. v. Shubert Org., Inc.</u>, 695 F. Supp. 150, 155 (S.D.N.Y. 1988), citing <u>Shaw v. Rolex Watches, U.S.A. Inc.</u>, 673 F.

Supp. 674 (S.D.N.Y. 1987); Gregoris Motors v. Nissan Motor Corp. in U.S.A., 630 F. Supp. 902 (E.D.N.Y. 1986); Levitch v. Columbia Broadcasting System, Inc., 495 F. Supp. 649 (S.D.N.Y. 1980), aff'd per curiam, 697 F.2d 495 (2d Cir. 1983).

Nor is it important that RAB has a large market share in the production of kosher food products. The fact that a defendant has a large market share "does not change [the] analysis" that "vertical integration does not violate antitrust laws." Agency Development, Inc. v. Med America Ins. Co., 310 F. Supp. 2d 538, 544 (W.D.N.Y. 2004). This is true even where defendant is a monopolist in the production of a good.[1] "[W]hen a monopolist has acquired its monopoly at one level of a product market, its vertical expansion into another level of the same product market" is generally not anticompetitive. Port Dock, 507 F.3d at 124. Such expansion will "ordinarily be for the purpose of increasing its efficiency" because "a monopolist can only extract one monopoly profit on a product," and once it "enjoys a monopoly at one level of the product's market, there is no further monopoly profit to be had from its expansion vertically."[2]

---

[1] At points, plaintiff suggests that RAB is a monopolist in the production of kosher foods. See P. Opp. 12 (describing RAB's "market power," including its 93% share of the "New England gefilte fish market.") But elsewhere it acknowledges competition in the market, noting that SWB "carries Kedem / Royal Wines products" (P. Opp. 3), a "major kosher food product brand" that competes with Rokeach and Manischewitz (P. Opp. 12). Absent a monopoly in the production of kosher foods, SWB's assertion that RAB's decision not to sell it Rokeach products will "drive SWB out of business" is undermined (Am. Compl. ¶ 105), since SWB will be able to continue to sell these alternative kosher foods (in addition to whatever non-kosher products it carries).

[2] Port Dock acknowledges that there may be "special circumstances," in which a monopolist's vertical expansion could be anticompetitive. 507 F.3d at 125. Examples include where vertical expansion is used to facilitate anticompetitive price discrimination, avoid government price regulation, or to increase barriers to entry to new competitors at the production level. Id. However, plaintiff pleads no facts that would suggest that any such special circumstances exist here.

9

Id. For this reason, the Second Circuit upheld a dismissal for lack of standing in Port Dock, where the defendant, a monopolist at the manufacturing level, refused to sell any product to the defendant, an independent distributor, in favor of distributing its product itself. Id. at 119-20. See also G.K.A. Beverage Corp. v. Honickman, 55 F.3d 762, 767 (2d Cir. 1995) (affirming dismissal of claim of "distribution monopoly" of a company's own product because a "vertically structured monopoly can take only one monopoly profit").

Thus, RAB's decision to terminate the Distributorship Agreement is not itself an anticompetitive act. Neither is that decision an "anticompetitive effect . . . of [a] violation" of the antitrust laws, Brunswick, 429 U.S. at 489, which is to say, an effect of any monopoly power RAB might now possess. Even assuming RAB to be a monopolist in the production of kosher food products, its market position in that market was incidental to its ability to terminate the Distributorship Agreement. Had RAB owned only Rokeach, and not Manischewitz, it still could have terminated the Distributorship Agreement and caused the same injury to SWB. Similarly, Rokeach acting alone, prior to the acquisition by RAB, could have terminated the agreement, and caused the same injury to SWB.

The Second Circuit holding in Port Dock again controls the outcome:

> Where a defendant is alleged to have acquired other firms in order to achieve monopoly power at the manufacturing level of a product market, dealers or distributors terminated in the aftermath do not have standing to assert claims under section 2 of the Sherman Act or section 7 of the Clayton Act for monopolization at the manufacturing level. Dealers in this situation lack standing because their particular injury was not caused by an exercise of the defendant' newly acquired power to raise prices. Instead, the dealer's injury was caused by the manufacturer's decision to terminate their relationship, something the manufacturer could have just as well done without having monopoly power.

10

507 F.3d at 123 (citations omitted). There is nothing about RAB's alleged monopoly power over kosher foods that enabled the termination of the Distributorship Agreement. Since it cannot be said that SWB's injury is caused by an exploitation of RAB's monopolistic position, that injury is not an "injury of the type the antitrust laws were intended to prevent." Brunswick, 429 U.S. at 489. See also A.G.S. Electronics, Ltd. v. B.S.R. (U.S.A.), Ltd., 460 F. Supp. 707, 710 (S.D.N.Y.), aff'd, 591 F.2d 1329 (2d Cir. 1978) (Terminated distributor lacked antitrust standing because the injuries "all flow from the termination of its distributorship rather than any anticompetitive effects of the defendants' acquisition of [the second manufacturer].").

    C.    Predatory Pricing

As with the allegation of monopoly pricing, plaintiff's claim of predatory pricing fails to allege any actual injury. Plaintiff claims that "RAB and Millbrook have *attempted* to undercut SWB by *attempting* to sell the same kosher and ethnic grocery products . . . at a significant discount." (Am. Compl. ¶ 105) (emphasis added). See also id. ¶ 60 ("RAB and Millbrook have *offered* to sell Rokeach products directly to Stop & Shop at a price significantly below the price at which RAB previously sold the same products to SWB.") (emphasis added). It has not alleged that RAB succeeded in undercutting SWB, or has actually sold to SWB's customers at a discount. A company employs predatory pricing when it sells its goods below cost in the hope of forcing its competitors also to sell below cost. See generally Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 588 (U.S. 1986). The harm to competitors is that they are forced to incur losses that may ultimately drive them out of business. See id. Plaintiff has not alleged that it has, in fact, been forced to reduce prices in order to compete, nor that such price reductions have caused it to incur a loss, and thus it does not have standing to make a predatory

11

pricing claim.

In sum, the only actual injury plaintiff has alleged flows from RAB's termination of the Distributorship Agreement. And while plaintiff may be correct that this termination was unjustified and wrongful, any injury it caused is simply not an injury addressable by the antitrust laws. Employing tactics that undermine one's competitors – even unfairly – does not violate the antitrust laws. "Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws; those laws do not create a federal law of unfair competition." Brook Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 225 (1993). See also Balaklaw v. Lovell, 14 F.3d 793, 797 (2d Cir. 1994) ("The antitrust laws . . . were enacted for the protection of competition, not competitors."). Because plaintiff does not allege antitrust injuries, it does not have standing to proceed under the antitrust laws.

### III. Specific Performance

Defendants also move to dismiss plaintiff's claim for specific performance of the Distributorship Agreement between SWB and RAB. The interpretation of such private contracts is generally a question of state law. See Security Ins. Co. of Hartford v. TIG Ins. Co., 360 F.3d 322, 326 (2d Cir. 2004), quoting Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 474 (1989). In the instant case, plaintiff brings its claim for specific performance under Massachusetts law.

Massachusetts law provides that "[w]hen either party repudiates the contract with respect to a performance not yet due . . . the aggrieved party may . . . resort to any remedy for breach." Mass. Gen. Laws ch. 106 § 2-610. For a buyer of goods, such remedies may, "in a proper case," include "specific performance." Id. § 2-711. Specific performance is proper, in turn, where "the

12

goods are unique or in other proper circumstances." Id. § 2-716. Finally, the Comment to Section 2-716 indicates that "unique" is meant to cover not only contracts for the sale of "heirlooms or priceless works of art which were usually involved in the older cases," but also "[o]utput and requirements contracts involving a particular or peculiarly available source." In short, the emphasis is on the "commercial feasibility of replacement," and even where the goods in question are not unique, an "inability to cover is strong evidence of 'other proper circumstances.'" Id.

Plaintiff has adequately alleged that the goods in question are "unique" or that there exist "other proper circumstances" to justify specific performance. It alleges that the "Rokeach Labels are well-known brand names within the kosher food industry and have generated solid brand loyalty over many years, and is [*sic*] one of the dominant brand names in the New England market." (Am. Compl. ¶ 13.) It may well be that from the standpoint of the consumer, other brands of kosher products may be readily substituted for Rokeach brands. From the standpoint of SWB as a distributor, however, SWB adequately alleges that the other products for which it has been able to acquire distribution rights are not equivalents for the Rokeach brands, as they are far less desirable in the market place.

It is within the equitable power of a court to grant specific performance where a plaintiff is "unable by reason of the nature of the subject, *the conditions of the market*, or other circumstances, to procure an article substantially similar to the one which he contracted to buy." Poltorak v. Jackson Chevrolet Co., 322 Mass. 699, 700 (1948) (emphasis added).[3] In applying

---

[3] Poltorak v. Jackson Chevrolet Co., 322 Mass. 699 (1948), though decided before Massachusetts adopted the UCC, is nonetheless "significant" and on point because the Massachusetts comment to § 2-716 acknowledges that its reasoning is "consistent with the UCC's vision of when specific performance should be allowed." i.Lan Sys. v. Netscout Serv.

13

this test, the question is "whether damages for the breach are or are not the equivalent of the promised performance." Id.

Defendants argue, correctly, that "a mass-produced item is the antithesis of the word 'unique.'" i.Lan Sys. v. Netscout Serv. Level Corp., 183 F. Supp. 2d 328, 334 (D. Mass. 2002). In i.Lan Sys., the Court dismissed the claim for specific performance even though the plaintiff had "tailored its business around" the defendant's product. Id. The court held that it would "not conflate reliance [on a product] with uniqueness," observing that the plaintiff "certainly could purchase comparable software on the open market and reconfigure its systems to run that software, just as any person could buy such software and run it." Id. But SWB has alleged not merely that it has chosen to "tailor[ ] its business around" Rokeach products, but that other kosher food brands simply are not adequate replacements for Rokeach products in the relevant market. SWB in not an end-consumer of the product, to whom another similar food product may be an adequate replacement. It is a distributor that seeks to provide products demanded in a particular marketplace. According to the complaint, all brands are not interchangeable in that market.

Of course, what is alleged in the complaint may turn out not to be supported by the evidence. Specific performance is an equitable remedy. A plaintiff seeking such relief must demonstrate the inadequacy of damages to compensate it for any breach. It may well be that upon a full record the Court will conclude that alternate brands of kosher products are available to permit SWB to "cover" its loss and be compensated by damages based on the costs of such products, or that, even if Rokeach products are uniquely desirable in the relevant market, SWB

---

Level Corp., 183 F. Supp. 2d 328, 334 (D. Mass. 2002).

may be fully compensated in damages for any sales that it loses because of its inability to supply that brand to its customers. But this is not a matter to be decided on the pleadings. SWB has adequately alleged that it is entitled to specific performance, whether or not it can ultimately prove it.

IV.     **Leave to Replead**

SWB requests that in the event this Court concludes plaintiff has not adequately pled its attempted monopolization claim it should be allowed to replead in order to cure any defects. (P. Opp. at 4.) Rule 15(a) of the Federal Rules of Civil Procedure provides that a "court should freely give leave when justice so requires." Leave to replead may be denied if repleading would be futile, Acito v. IMCERA Group, Inc., 47 F .3d 47, 55 (2d Cir. 1995), but it is not clear that repleading would be futile here. Notably, since plaintiff filed its Memorandum in Opposition, two important cases have been decided that have altered the relevant pleading landscape for antitrust claims. See Twombly, 127 S. Ct. 1955 (motion to dismiss standard); Port Dock, 507 F.3d 117 (antitrust injury). Given the opportunity to examine these holdings, which have informed the Court's decision in the instant matter, plaintiff may be better able to suitably frame its claims for relief. Accordingly, leave to replead plaintiff's antitrust claim will be granted.[4]

---

[4] While leave to replead is granted, plaintiff should take heed that the Second Circuit's decision in Port Dock poses a significant substantive obstacle to plaintiff's claims, that may well prevent SWB from succeeding with any antitrust claim on these facts. That leave to replead is granted does not indicate that repleading is encouraged, or suggest that an amended complaint is likely to state a cause of action. It merely reflects that the Court, necessarily ignorant of the facts that plaintiff might be able to allege, cannot conclude that repleading is *necessarily* futile.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is granted with respect to plaintiff's claim for attempted monopolization, and denied with respect to plaintiff's claim for specific performance. Plaintiff is granted leave to replead the dismissed claim within thirty days of the filing of this Opinion and Order.

SO ORDERED.

Dated: New York, New York
February 27, 2008

*[signature]*

GERARD E. LYNCH
United States District Judge